**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RODOLFO TRUJILLO, AKA El Negro,
AKA Alexander Quintana Ruiz,
*Defendant-Appellant*.

No. 11-50353

D.C. No.
2:92-cr-00256-
DDP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted
January 8, 2013—Pasadena, California

Filed April 16, 2013

Before: William C. Canby, Jr., Stephen Reinhardt,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Canby

## SUMMARY[*]

### Criminal Law

The panel vacated the district court's order denying a second motion pursuant to 18 U.S.C. § 3582(c)(2) for reduction of a sentence imposed following the defendant's 1993 conviction of conspiracy to possess and possessing with intent to distribute cocaine.

The panel held that 18 U.S.C. § 3582 contains no jurisdictional bar to the district court's entertaining a second motion under § 3582(c)(2), and that any non-jurisdictional challenges to the second motion were waived by the government when it failed to object.

The panel held that the district court erred in failing to explain at all its rejection of the defendant's arguments based on the factors set forth in 18 U.S.C. § 3553(a).

The panel held that an upward departure permitted in an application note to amended U.S.S.G. § 2D1.1 did not violate the Ex Post Facto Clause.

### COUNSEL

Wendy T. Wu (argued), Assistant United States Attorney, Cyber & Intellectual Property Crimes Section; Robert E.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dugdale, Assistant United States Attorney, Chief, Criminal Division, Los Angeles, California, for Plaintiff-Appellee.

Brianna J. Mircheff (argued), Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

**OPINION**

CANBY, Senior Circuit Judge:

Rodolfo Trujillo was convicted in 1993 of conspiracy to possess and of possessing with intent to distribute 2,915 kilograms of cocaine. He was sentenced to 360 months imprisonment. Subsequently, the Sentencing Commission amended the Sentencing Guidelines to lower the offense level applicable to Trujillo, with an application note indicating that upward departures from the new level might be warranted in cases involving an excessive quantity of drugs. U.S.S.G. § 2D1.1 & Application Note 17.[1] The amendment was made retroactive.[2]

---

[1] Amendment 505, effective Nov. 1, 1994, lowered to 38 the maximum offense level for trafficking in a quantity greater than 150 kilograms. U.S.S.G. § 2D1.1(a)(2), (c)(1). Its Application Note 19, which stated that an upward departure might be warranted on the basis of drug quantity, has been renumbered multiple times and now appears in the 2012 Guideline Manual as Application Note 26(B) to Guideline 2D1.1. In this opinion we refer to it by the number used in the two district court decisions denying Trujillo's § 3582(c)(2) motions: Application Note 17.

[2] Amendment 536, effective Nov. 1, 1995, made Amendment 505 retroactive. U.S.S.G. § 1B1.10(a), (c).

Trujillo subsequently moved under 18 U.S.C. § 3582(c)(2) for a reduction of his sentence. The district court denied the reduction, invoking the application note that permitted an upward departure because of the excessive quantity of drugs involved. Thirteen years later, Trujillo filed a second § 3582(c)(2) motion for a reduction of his sentence, arguing in part that favorable treatment was justified by various factors under 18 U.S.C. § 3553(a), including his family ties, his lack of other criminal history, his post-sentencing rehabilitation, and the need to avoid unwarranted sentencing disparities. The district court entertained the successive motion without objection from the government, but denied relief principally on the ground that Trujillo's role in the offense and the amount of drugs involved justified an upward departure. The district court did not discuss the § 3553(a) factors urged by Trujillo. Trujillo now appeals.

We address three principal issues: First, the government contends that the district court lacked jurisdiction to entertain a second motion under § 3582(c)(2). We conclude that § 3582 contains no such jurisdictional bar. Any non-jurisdictional challenges to a second motion were waived by the government when it failed to object.

Second, we conclude that the district court erred in failing to explain at all its rejection of Trujillo's arguments based on the § 3553(a) sentencing factors. We accordingly vacate the district court's order and remand for further proceedings.

Third, we reject Trujillo's contention that the upward departure under the amended Guideline's application note violated the Ex Post Facto Clause.

## I.

On appeal, the government contends for the first time that the district court lacked subject matter jurisdiction to consider Trujillo's second § 3582(c)(2) motion. *See Ratanasen v. State of Cal., Dep't of Health Serv.*, 11 F.3d 1467, 1473 (9th Cir. 1993) (jurisdictional questions are an exception to the general rule that arguments not raised before district court are waived on appeal). The government begins with the well-established rule that a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In the absence of an exception to that rule, we have held that the bar against modifications is jurisdictional. *See United States v. Aguilar-Reyes*, 653 F.3d 1053, 1055 (9th Cir. 2011). Section 3582(c)(2) provides such an exception, but the government contends that Trujillo's successive motion did not meet that section's requirements, thus leaving the jurisdictional bar in place. Section 3582(c)(2) states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing commission.

18 U.S.C. § 3582(c)(2). The statute in terms clearly does not prohibit a second motion. The government contends,

however, that Trujillo's second motion does not qualify for § 3582(c)(2)'s exception because he was serving the sentence imposed by the district court in response to his first motion under that section, and the Sentencing Commission did not lower the Guideline "subsequently" to that sentence.

The government's argument relies on a strained reading of the statute, and a mischaracterization of the first motion proceeding. The sentence that Trujillo is serving is the one originally imposed upon him when he was convicted. That sentence was not modified by the district court in response to Trujillo's first motion under § 3582(c)(2); the court simply declined to "exercise its discretion to lower Trujillo's sentence below its current level." To construe that ruling as the occasion on which Trujillo was "sentenced to a term of imprisonment" within the meaning of § 3582(c)(2) is neither a reasonable interpretation of the statute nor a reasonable description of what happened at the first motion hearing. *See Dillon v. United States*, 130 S. Ct. 2683, 2691 (2010) ("[A] district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense."). Trujillo was, and is, serving a sentence of imprisonment imposed upon him at the time of his conviction, and the district court had jurisdiction under § 3582(c)(2) to entertain his second motion because the term of that sentence was "subsequently" lowered by the Sentencing Commission.

Our conclusion that § 3582(c)(2) does not impose or result in a jurisdictional bar to a second motion is buttressed by the Supreme Court's instruction that we construe statutory limitations as non-jurisdictional in the absence of clear directions from Congress. "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed

. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (internal citations and footnote omitted). The label "jurisdictional" is properly reserved for designating the types of cases and individuals within a court's reach. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). It is ordinarily not the correct classification for "claim-processing rules" such as temporal or, as here, numerical limitations on motions addressed to the same tribunal. *See id*. at 455–56; *Joshi v. Ashcroft*, 389 F.3d 732, 734–35 (7th Cir. 2004) (holding that a limitation on the number of motions to reopen or reconsider does not create a jurisdictional bar); *cf. Socop-Gonzalez v. INS*, 272 F.3d 1176, 1192–93 (9th Cir. 2001) (en banc) (holding that a 90-day filing deadline for motions to reopen or reconsider did not create a jurisdictional bar). "[T]he emergent distinction . . . is between those [limits] that govern the transition from one court (or other tribunal) to another, which are jurisdictional, and other [limits], which are not." *Joshi*, 389 F.3d at 734.

Our sister Circuits have divided on the question whether a district court lacks jurisdiction to entertain a second § 3582(c)(2) motion. The Seventh and Fourth Circuits have precluded second motions in terms suggesting a lack of jurisdiction. *United States v. Redd*, 630 F.3d 649, 651 (7th Cir. 2011); *United States v. Goodwyn*, 596 F.3d 233, 236 (4th Cir. 2010); *see also United States v. Randall*, 666 F.3d 1238, 1242–43 & n.6 (10th Cir. 2011) (upholding denial of untimely motion for reconsideration of order denying § 3582(c)(2) relief, but under abuse of discretion standard).

The Third Circuit, however, upheld a district court's entertainment of a second § 3582(c)(2) motion in a case

closely parallel to ours. *United States v. Weatherspoon*, 696 F.3d 416 (3rd Cir. 2012), *cert. denied*, 133 S. Ct. 1301 (2013). In *Weatherspoon*, as here, the government failed to object to a district court's entertainment of a second § 3582(c)(2) motion and challenged it for the first time on appeal as a jurisdictional defect. The Third Circuit referred to the contrary circuit authority, and stated:

> Though our sister circuits may be right that such silence [of Congress in failing specifically to authorize successive motions], when read in light of the statute's purpose of restricting a district court's authority to revisit a criminal sentence, means that a defendant is only entitled to one bite at the apple, it does not follow that this restriction goes to the subject matter jurisdiction of the district court. After all, a rule derived from congressional silence does not support an inference that Congress has "clearly stated" its intent to limit a district court's jurisdiction to one § 3582(c)(2) motion. *See . . . Animal Sci. Prods., Inc.*, 654 F.3d [462,] 468 [3rd Cir. 2011] (applying the *Arbaugh* "clearly states" test).

*Id.* at 421. We agree with this jurisdictional analysis and reject any contrary views that may have been adopted in whole or in part by other circuits.

Holding as we do that the district court had jurisdiction to entertain Trujillo's second motion under § 3582(c)(2), we need not address the validity or applicability of non-jurisdictional restrictions of such motions urged by the government, including law of the case or waiver by Trujillo in not appealing the denial of his first motion. Those non-

jurisdictional challenges were waived by the government's failure to object in the district court. *See Slaven v. Am. Trading Transp. Co.*, 146 F.3d 1066, 1069 (9th Cir. 1998).

## II.

We proceed to the merits of Trujillo's appeal.[3] In Trujillo's second § 3582(c)(2) motion, he asked for a sentence reduction based on *United States v. Booker*, 543 U.S. 220 (2005), Amendments 505 and 536 to the U.S. Sentencing Guidelines (the basis of his first § 3582(c)(2) motion), and the § 3553(a) factors. The district court correctly noted that *Booker* did not lower the Sentencing Guidelines, but rather made them advisory; it was also a decision of the Supreme Court and not, as § 3582(c)(2) requires, a reduction enacted by the Sentencing Commission. *See Dillon v. United States*, 130 S. Ct. 2683, 2693 (2010). The court then explained that it would not effectively reverse the previous district court's denial of Trujillo's § 3582(c)(2) motion based on Amendments 505 and 536. The court cited Application Note 17 to U.S.S.G. § 2D1.1, which allowed for an upward departure based on drug quantity in extraordinary cases. The court explained:

> Defendant's conviction involved more than 2,800 kilograms of cocaine, an amount well above ten times the 150 kilogram minimum in

[3] We have jurisdiction under 28 U.S.C. § 1291 to review the discretionary denial of a § 3582(c)(2) sentence reduction motion. *United States v. Colson*, 573 F.3d 915, 916 (9th Cir. 2009). We review for abuse of discretion, which occurs if the district court does not apply the correct law or predicates its decision on a clearly erroneous factual finding. *United States v. Chaney*, 581 F.3d 1123, 1125 (9th Cir. 2009). We review de novo any underlying questions of law. *Id*.

> Amendment 505's amended drug quantity
> table . . . . In addition, Defendant was one of
> the masterminds behind the . . . distribution of
> the cocain[e] at issue. In light of these facts,
> the court has consider[ed] Defendant's
> sentence under the new guidelines pursuant to
> Amendment 505 and concludes that here—
> where more than 10 times the maximum drug
> quantity established by offense level 38 was
> in Defendant's possession—an upward
> departure is warranted. Accordingly, the
> court declines to . . . resentence Defendant.

The order did not discuss any of the § 3553(a) factors that
Trujillo argued in support of a lower sentence. Trujillo's
presentation about the § 3553(a) factors comprised eight
pages of argument and an additional 39 pages of addenda
consisting of health records and certificates of achievement
from inmate programs. Congress enacted 18 U.S.C.
§ 3553(a) in order to ensure that judges impose sentences
"sufficient, but not greater than necessary, to comply with the
purposes" of imprisonment, such as deterrence, punishment,
and public safety. 18 U.S.C. § 3553(a), (a)(2); *see Pepper v.
United States*, 131 S. Ct. 1229, 1242 (2011). The factors
include: the nature and circumstances of the offense and the
history and characteristics of the defendant; the purposes of
sentencing; the kinds of sentences available; the sentences
and ranges established by the Sentencing Guidelines; relevant
policy statements issued by the Sentencing Commission; the
need to avoid unwarranted sentencing disparities among
similarly situated defendants; and the need to provide
restitution to victims. 18 U.S.C. § 3553(a). Accordingly, the
Supreme Court has consistently instructed that "the
punishment should fit the offender and not merely the crime,"

and thus judges should use "the fullest information possible concerning the defendant's life and characteristics" to determine the appropriate sentence. *Pepper*, 131 S. Ct. at 1235, 1240 (quoting *Williams v. New York*, 337 U.S. 241, 246–47 (1949)); *Gall v. United States*, 552 U.S. 38, 49–50 (2007) ("[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."); *accord United States v. Ringgold*, 571 F.3d 948, 950 (9th Cir. 2009).

A district court is required to "consider" the § 3553(a) factors both in the initial imposition of a sentence and in any subsequent reduction of a sentence after the modification of a guidelines range by the Sentencing Commission. *See* 18 U.S.C. § 3582(a) (upon imposition of term of imprisonment, sentencing court "shall consider the factors set forth in section 3553(a) to the extent that they are applicable"); 18 U.S.C. § 3582(c)(2) (court "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable"). The district court's duty to consider the § 3553(a) factors necessarily entails a duty to provide a sufficient explanation of the sentencing decision to permit meaningful appellate review. *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc). We have held that there is no mechanical requirement that a sentencing court discuss every factor; even where a judge never mentions "§ 3553(a)," it may be clear from the court's experience and consideration of the record that the factors were properly taken into account. *Id.* at 995–96; *see Rita v. United States*, 551 U.S. 338, 356–57 (2007) ("[W]hen a judge decides simply to apply the

Guidelines to a particular case, doing so will not necessarily require lengthy explanation.").

The Supreme Court has instructed, however, that "[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Rita*, 551 U.S. at 357. Our en banc court, too, has made clear that "when a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor . . . then the judge should normally explain why he accepts or rejects the party's position." *Carty*, 520 F.3d at 992–93; *see United States v. Stoterau*, 524 F.3d 988, 999 (9th Cir. 2008). Here, Trujillo presented fairly extensive arguments and evidence concerning the "characteristics of the defendant," pursuant to 18 U.S.C. § 3553(a)(1): in addition to citing his lack of a prior criminal record, he presented evidence of: his educational history including graduation from technical school as a mechanical electrician; the support of his siblings and two children; his considerable involvement in constructive prison activities; his post-sentencing rehabilitation; and his failing health. He also argued that the judge should consider unwarranted sentencing disparities pursuant to § 3553(a)(6). Trujillo cited *United States v. Zakharov*, 468 F.3d 1171 (9th Cir. 2006), a case in which a defendant convicted of possession and conspiracy to possess with intent to distribute 9,200 kilograms of cocaine was sentenced to 240 months imprisonment with five years supervised release—notably, after both the enactment of the Guidelines amendment that lowered the maximum offense level for drug distribution to 38 and the application note that permitted judges to depart upward if the amount distributed

was greater than ten times the maximum amount listed for that offense level (150 kilograms of cocaine). *Id.* at 1175. Trujillo also cited *United States v. Perlaza*, 439 F.3d 1149, 1155, 1158 (9th Cir. 2006) where nine defendants were all sentenced to 200 months or below for smuggling about 2000 kilograms of cocaine.[4] (Trujillo's sentence was 360 months for 2,915 kilograms).

In *Pepper* and *Gall*, the Supreme Court made clear that postsentencing or post-offense rehabilitation—particularly in light of its tendency to reveal a defendant's likelihood of future criminal conduct—was a critical factor to consider in the imposition of a sentence. *See Pepper*, 131 S. Ct. at 1242–43 (citing 18 U.S.C. § 3553(a)(2)(B)–(C)); *Gall*, 552 U.S. at 59 (same). In *Kimbrough v. United States*, 552 U.S. 85, 91 (2007), the Court also emphasized that unwarranted disparities between offenders—and the concern that such disparities would result in imposing sentences "greater than necessary" to achieve the objectives of sentencing—was an important factor for district courts to consider.

Regardless of the ultimate force of Trujillo's arguments, they are not frivolous. The district court did not address any of them, even to dismiss them in shorthand. This total omission goes against the explicit policy considerations in *Rita*, where the Supreme Court explained that while a district judge need not enumerate every factor supporting a particular sentence, "[A] statement of reasons is important. The sentencing judge should set forth enough to satisfy the

---

[4] The convictions of all but one of the defendants in *Perlaza* were reversed on jurisdictional grounds unrelated to the length of their sentences.

appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." 551 U.S. at 356.

The government asserts that the district court's explanation was adequate because its order began, "Having reviewed the papers submitted to the court . . . ," thereby suggesting that the record had been adequately and thoroughly considered. We find this argument unpersuasive. First, the *Rita* instruction is concerned with *explanation*, not merely *consideration.* Underlying this emphasis is a concern that appellate courts and the public have an adequate basis for concluding that sentencing occurred in a reasonable fashion. 551 U.S. at 357. It is true that, in *Carty*, we relied in part on the district judge's statement that he had "reviewed the papers," and because the papers had discussed the § 3553(a) factors, we assumed that the judge had considered them. *Id.* at 996. But we made this observation after considerable discussion of other elements supporting our conclusion that the sentencing judge, who had held an extensive sentencing hearing dealing with the § 3553(a) factors, had set forth a sufficient explanation of the sentence.[5] *See id.* at 990. We do not interpret *Carty* to stand for the proposition that a mere statement that the judge had read the papers is, by itself and automatically, sufficient as an explanation of the judge's treatment of the § 3553(a) factors. To draw such a conclusion from *Carty* would deprive of all force the language in *Rita* and *Carty* itself stating that a sentencing judge presented with nonfrivolous arguments on § 3553(a) factors should

---

[5] *Carty* also placed considerable emphasis on the fact that Carty's case was a simple one and that the sentence imposed was within the Guidelines. *Carty*, 520 F.3d at 995. The denial of Trujillo's § 3582(c)(2) motion resulted in a sentence above the amended Guideline.

ordinarily explain why he rejects them. *Rita*, 551 U.S. at 357–58; *Carty*, 520 F.3d at 992–93.

The government is correct in noting that the district court discussed the quantity of drugs involved and Trujillo's role, both appropriate considerations under § 3553(a)(1). But *Rita* and this Court instruct that, "[w]here the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence," a sentencing judge "will normally go further and explain why he has rejected those arguments." *Rita*, 551 U.S. at 357; *accord Carty*, 520 F.3d at 992–93; *Stoterau*, 524 F.3d at 999–1000. Trujillo presented nonfrivolous arguments, and the district court did not at all explain the reasons for rejecting them; this was legal error. We vacate the district court's order and remand to the district court for proceedings not inconsistent with this opinion.

## III.

Finally, Trujillo argues that the district court, in employing an upward departure pursuant to Application Note 17, violated the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3. For a court to violate the Ex Post Facto Clause in its enforcement of a new law, "the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it." *Hamilton v. United States*, 67 F.3d 761, 764 (9th Cir. 1995) (quoting *Miller v. Florida*, 482 U.S. 423, 430 (1987)) (internal quotation marks omitted).

The district court did not explicitly address Trujillo's argument. In any case, the argument fails. Although the revision of the sentencing guidelines and the addition of the application note were clearly retrospective, they did not

disadvantage Trujillo: the permission for upward departure merely caused him to retain the same sentence that he had been given before the law was revised. *See* U.S.S.G. § 2D1.1, Application Note 17.

This case is not like *Hamilton*, which involved a defendant who was originally sentenced as a career offender under the 1988 Guidelines, in part because his offense of conviction was determined to be a "crime of violence." The Sentencing Commission thereafter amended the applicable Guideline to specify that Hamilton's offense of conviction, possession of a firearm by a felon, did not qualify as a crime of violence. The amendment was retroactive. When Hamilton moved to modify his sentence to take account of the Guideline amendment, the district court gave him the benefit of the amendment, but then applied the 1993 Guidelines that resulted in a larger sentence than he would have been subject to under the original 1988 Guidelines, as amended only by the retroactive amendment by the Sentencing Commission. We held that application of the new, disadvantageous 1993 Guidelines violated the Ex Post Facto clause, even though the new sentence did not exceed the original one. *Hamilton*, 67 F.3d at 764–65.

This case differs from *Hamilton* in two important particulars. First, Trujillo was not subjected to a new and more severe sentence under a new set of Guidelines unrelated to the retroactive amendment applicable to his case. Instead, Trujillo seeks to take advantage of one portion of a single amendment to the Guideline under which he was sentenced, and to disregard a condition that was added to the Application Note to that very Guideline as part of the same amendment. We agree with the government that Trujillo is not entitled to select only the favorable portion of an amendment to a single

Guideline and to disregard the unfavorable portion, so long as his overall sentence is not increased beyond that originally imposed.

Second, the amendment in Trujillo's case, taken as a whole and applied to his original sentence, did not render the term of that sentence necessarily erroneous. The Guidelines as amended still permitted the sentence Trujillo originally received. Thus, the assessment of prejudice resulting from the district court's denial of relief to Trujillo is based on whether his sentence after that denial exceeded his original sentence, which it did not.

In *Hamilton*, in contrast, the retroactive amendment providing that Hamilton's offense of conviction was not a crime of violence rendered his sentence erroneous. We therefore compared his new sentence of 77 months to the 12–18 month sentence he would have been required to receive had the retroactive amendment been in effect at his original sentencing. *Hamilton*, 67 F.3d at 765. He was accordingly disadvantaged by the application of the new set of Guidelines, in violation of the Ex Post Facto clause. Because Trujillo's original sentence was not rendered legally erroneous by the Sentencing Commission's retroactive amendment, we compare his current sentence to his original sentence of 360 months to determine whether Application Note 17 "disadvantaged" him. Because the district court's denial of relief under § 3582(c)(2) did not result in a sentence that was longer than the one originally imposed, there was no Ex Post Facto Clause violation.

**IV.**

To sum up: The district court had jurisdiction to entertain Trujillo's second motion to modify his sentence under § 3582(c)(2). Its denial of relief did not violate the Ex Post Facto Clause. Because the district court did not explain in any way its reasons for rejecting Trujillo's arguments regarding the § 3553 factors, however, we vacate the district court's order and remand for further proceedings.

**VACATED and REMANDED**.